Alvin Hawkins, J.,
delivered the opinion of the Court.
This bill was filed on the 26th of March, 1867, in the Chancery Court at Winchester.
Complainants allege, that about the 1st of January, 1863, they hired of defendant, five negroes belonging to the estate of his intestate, for the year 1863, in consideration of which complainants gave their note for $750; “that the contract of hiring was made with a view to a payment in Confederate money, which was then much depreciated, and, in consequence, prices of every kind much inflated. There was no other money, or at least very little, in circulation — so little, that no one contracted with a view to any other than Confederate money. The hire fixed by the parties was, in consequence, double the value of such hire in any good currency.”
They charge that the defendant has instituted a suit in the Circuit Court of Eranldin County, upon said note.
Complainants further allege that it was expressly stipulated they were to give up the negroes if called for 'at any time, during the year. This was for the purpose of removing the negroes in the event that kind of property should be further jeopardized by the advance of-the Federal troops. The troops came, and two of the men went with them; the others remained, but were of very little service.
Complainants pray that defendant be enjoined from prosecuting his suit at law, and an account be taken to ascertain the true value of the hire.
*235 An injunction was granted and issued, in pursuance of the prayer of the bill.
At the November Term, 1867, of said Court, the Chancellor dismissed the bill, upon motion, for want of equity upon its face. Complainants have appealed to this Court.
It is not alleged that the note, upon its face, is payable in Confederate Treasury notes, or that there was any contract or agreement that the same should be payable in such currency.
The charge is, in substance, that inasmuch as there was but little of any other kind of money in circulation, therefore the contract of hiring was with a view to a payment in Confederate money. Therefore, because Confederate money had depreciated, and prices Avere inflated, complainants ask that the note be scaled.
However much we may sympathize with complainants, and commiserate their misfortunes, we cannot grant relief upon the ground stated in the bill, without doing violence to long and well-settled principles of law, to which we feel bound to adhere.
The terms of the contract were reduced to writing.
By these terms the complainants were to pay the defendants $750.00.
It is in effect, upon its face, a contract to pay legal currency.
It is not alleged that there was any contract or agreement in reference to the payment, inconsistent with the terms of the within contract, and not incorporated therein.
To give the relief asked for upon the first grounds *236 assigned, would be, in effect, to set aside tbe contract entered into and agreed upon by the parties as evidenced by the writing, without even an allegation that the same had been entered into by mistake or accident, or that it had been procured by fraud, or that the same was illegal, and the substitutions therefor another and different contract, and one to which the parties have never assented; and all this because the principal currency in circulation at the time, and in which it was expected the payment would be made, was depreciated, and consequently prices much inflated.
Upon the other ground of relief set up in the bill, it is equally well settled that the complainants are not entitled to relief.
The hirer of a slave was owner for the period of hiring; and in the absence of special contract or fraud, the hirer took all the risks of owner for that period.
And if the slave ran away or died during the period of hireing, or their services were of little value to the hirer, he must bear the loss.
There is no error in the decree of the Chancellor. It will, therefore, be affirmed.